UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| CAPTAIN VAN DYKE TRUST, | Case No. 8:10-bk-14973-KRM |
| TREASURE CHEST, LLC, | Case No. 8:10-bk-14976-KRM |
| Debtors. _____/ | **(Jointly Administered under Case No. 8:10-bk-14973-KRM)** |

**DEBTORS' CONFIRMATION AFFIDAVIT
AND MEMORANDUM IN SUPPORT OF CONFIRMATION**

Stephen R. Leslie
Florida Bar No. 000349
Barbara A. Hart
Florida Bar No. 512036
Stichter Riedel Blain & Prosser, P.A.
110 E. Madison St., Ste. 200
Tampa, FL 33602
813-229-0144
813-229-1811 (facsimile)
sleslie@srbp.com
bhart@srbp.com
Attorneys for the Debtors

Tampa, Florida
January 7, 2011

## **EXHIBITS**

Exhibit 1 - Plan of Reorganization
(Doc. No. 78)

Exhibit 2 - Disclosure Statement
(Doc. No. 79)

Exhibit 3 - Ballot Tabulation for Plan of Reorganization
(Doc. No. 139)

Exhibit 4 - Net Cash Flow Summary

Exhibit 5 - Revised Projections

Exhibit 6 - GNC Lease

## DEBTORS' CONFIRMATION AFFIDAVIT AND MEMORANDUM IN SUPPORT OF CONFIRMATION

CAPTAIN VAN DYKE TRUST and TREASURE CHEST, LLC, as Debtors and Debtors in Possession in these jointly administered Chapter 11 cases (the "**Debtors**"), hereby file their Confirmation Affidavit and Memorandum of Law in Support of Confirmation ("**Confirmation Affidavit**") in respect to its Plan of Reorganization (Doc. No. 78)(the "**Plan**").

### I. SUMMARY OF THE DEBTORS AND THE PLAN[1] OF REORGANIZATION

#### A. Summary of the Debtors and their Business Operations:

Captain Van Dyke is the owner of a shopping center known as the Van Dyke Commons, also referred to as the Van Dyke Shopping Center (the "**Shopping Center**") consisting of two parcels of real property located at 17461 and 17623 North Dale Mabry Highway, Lutz, Florida at the southeast corner of Dale Mabry Highway and Van Dyke Road, Tampa, Florida, less than 13 miles from downtown Tampa in northwest Hillsborough County. The Shopping Center is located in an area which has been the leading retail sub market in the Tampa area for the past five years, both in asking rent growth and occupancy. The Shopping Center sits on twenty-one acres and is located at a signalized intersection with 1,950 feet of frontage on Dale Mabry Highway, which has a traffic count of 67,000 cars per day.

The Shopping Center consists of one building with approximately 139,000 square feet of net rentable space. The Shopping Center is over ninety-eight percent (98%) leased and is anchored by LA Fitness, Home Goods, Golfsmith and Petland. The Shopping Center's other tenants include: The Vine Bar, University Community Hospital,

---

[1] Capitalized terms shall have the same meaning ascribed to them in the Plan, which is attached hereto as Exhibit 1.

Visionary Eye Care, Massage Envy, Mariposa Mexican Grille, Grow Financial, Jake's Hamburger's, Scrap & Sew, New Beijing Restaurant, Planet Beach, Rose Nails, H&R Block, House of Brew's and Princess Boutique. The remaining two percent (2%) of lease space is being leased to General Nutrition Corporation ("GNC"), a Pennsylvania corporation and the largest global specialty retailer of nutritional products. GNC will take the space vacated by Scrap and Sew for a five (5) year term and one five (5) year option to renew. GNC's negotiated a per square foot rent of $24.00 ($4,000 per month)[2] and additional CAM charges of $5.14 per square foot.

Treasure Chest is a Florida limited liability company formed for the purpose becoming one of the beneficiaries of a business trust created by the Captain Van Dyke Trust Agreement dated December 8, 2003. As discussed below, Treasure Chest is a beneficiary of Van dyke.

Captain Van Dyke's operations have been historically profitable. Its financial problems began with the current economic downturn, which caused the Shopping Center to begin to sustain monthly operating losses. In October 2008, Captain Van Dyke sold an outparcel to McDonalds. From that sale, iStar FM Loans LLC ("**iStar**"), Captain Van Dyke's primary secured creditor, received net $1,395,897.46. Additionally, Captain Van Dyke made a $1,000,000 cash payment to iStar in December 2008 to renew its loan with iStar until September 2009. Thereafter, the capital markets for financing collapsed around the country making it impossible for Captain Van Dyke to secure new financing prior to the September 2009 maturity date.

---

[2] This clearly shows that iStar's appraisal, which had a market rent estimate of $20 per square foot or less, is flawed due to (among other things) lowball estimates of rental rates. See, e.g. Doc. No. 60, Ex. 2, p. 71.

4

iStar received a final judgment of foreclosure (the "**Foreclosure Judgment**") in the case styled *In re: iStar FM Loans, LLC v. Clark D. East, et al.*, Case No. 09 CA 07912 pending in the Circuit Court of Hillsborough County, Florida. A Notice of Appeal was filed. Pursuant to the Foreclosure Judgment, iStar asserts a secured claim asserted in the amount of $31,339,831.40. Since the July 2010, the Debtors have made monthly net cash flow payments to iStar totaling $965,828.26 through and including December 2010.

With respect to priority claims, the Debtors are current on their real and tangible property taxes,[3] and have escrowed an additional $286,468.64 for 2011 taxes. iStar holds a secured claim in the amount of $31,339,831,40. The Debtors' real property (retail center and outparcel) was appraised post-petition at a value of $31,350,000. See Noto Appraisal (Doc. No. 110). Post petition, the Debtors have made monthly net cash flow payments to iStar in excess of $960,000. Hence, iStar is an oversecured creditor. The Debtors also owe approximately $40,640.00. in Mechanic's Lien Claims, and the Debtors' unsecured claims, excluding insider claims, total approximately $575,000.

The Debtors assets consist primarily of rental income, tenant reimbursements, real property, and accounts for operating and real property taxes. The Debtors DIP Operating Account has a current balance of $435,805.42. The Debtors have no employees.

**B.     Overview of the Plan: Treatment of Creditors**

In accordance with §1123(a)(1) of the Bankruptcy Code, Allowed Administrative Expense Claims and Priority Tax Claims have not been classified in the Plan. The treatment accorded to Administrative Expense Claims and Priority Tax Claims is set forth below.

---

[3] 2010 real estate taxes were paid in full in November 2010 in the amount of $260,048.30.

5

1. **Administrative Claims**

Except as otherwise provided below, each Holder of an Allowed Administrative Expense Claim shall be paid (a) on the Effective Date, an amount, in Cash equal to the Allowed Amount of its Administrative Expense Claim, in accordance with Section 1129(a)(9)(A) of the Bankruptcy Code, or (b) under such other terms as may be agreed upon by both the Holder of such Allowed Administrative Expense Claim and the Debtors, or (c) as otherwise ordered by order of the Bankruptcy Court, as provided in Article 3 of the Plan.

2. **Class 1: Priority Claims**

Each Holder of an Allowed Priority Claim shall be paid (a) on the Effective Date, an amount, in Cash, by the Reorganized Debtors equal to the Allowed Amount of its Priority Claim, in accordance with Section 1129(a)(9)(B) of the Bankruptcy Code, (b) as otherwise agreed to by the Debtors and the Holder of an Allowed Priority Claim, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court.

3. **Class 2: Secured Claims of iStar FM Loans, LLC ("iStar")**

The Class 2 Secured Claim of iStar shall be Allowed in the amount of $31,339,831.40 and shall be paid in full, payments beginning thirty days after the Effective Date. iStar shall retain its lien. The monthly payments shall consist of principle and interest calculated at the annual rate of five percent (5%) (or such other rate as the Court deems fair and equitable), amortized over thirty (30) years (or such other term as the Court deems fair and equitable), with a balloon payment at five (5) years (or such other term as the Court deems to be fair and equitable). For ease of reference, the fixed monthly payment using the judgment amount of $31,339,831.40 at 5% and a thirty

6

(30) year amortization is $168,238.00. In connection with confirmation of the Plan, the Debtors will provide the Court and iStar modified loan documents containing the modified terms contained herein, or as have been determined by the Court to be fair and equitable. Notwithstanding the above, iStar may be paid under such other terms as may be agreed upon by iStar and the Debtors or the Reorganized Debtors, as the case may be.

4.   **Class 3: Mechanics Lien Claims**

The only known agreed Mechanics Lien Claim is the Claim of Bandes Construction Company, Inc., in the amount of $40,639.37. Maas Brothers Construction, Inc. may also assert a Mechanics Lien Claim, albeit such Claim is not an Allowed Claim or an agreed Claim. Holders of the Allowed Class 3 Claims shall retain the Liens securing such Claims to the extent of the Allowed Amount of such Claims. Class 3 Mechanics Lien Claims shall be paid 90% of the Allowed Amount of their Claims within one year after the Effective Date. Notwithstanding the above, each Holder of an Allowed Mechanics Lien Claim may be paid under such other terms as may be agreed upon by the Holder of such Allowed Mechanics Lien Claim and the Debtors or the Reorganized Debtors, as the case may be.

5.   **Class 4: Pappas Retail Leasing & Management ("Pappas")**

The management contract between the Debtors and Pappas shall be assumed, and modified, according to terms to be agreed upon between Pappas and the Debtors.

6.   **Class 5: General Unsecured Claims**

Holders of Class 5 Claims shall be paid an amount equal to 90% of their Allowed Unsecured Claim from a fund, the source of which shall be the net cash flow of business operations after debt service and expenses, payable in five equal yearly payments,

beginning one year from the Effective Date. If the Holders of Class 5 Claims have not been paid 90% of their Allowed Class 5 Claims at the end of the five-year term, the Equity Interests will make Cash contributions sufficient to fund the difference between the amount paid to date and fifty percent (50%) of the Allowed Class 5 Claims.

7. **Class 6: Equity Interests**

Equity Interests shall be cancelled and new equity shall be issued for the payment of $1,000 each, or in an amount that the Court deems to be fair and equitable.

C. **Summary of Acceptances of Plan**

A copy of Debtor's Ballot Tabulation is attached hereto as Exhibit 3.

D. **Objections to the Plan and Disclosure Statement**

As of the date of this Confirmation Affidavit, only iStar has filed objections to the final approval of the Disclosure Statement or to confirmation of the Plan (Doc. No. 119). iStar has alleged that the Disclosure Statement is deficient for failing to: (a) adequately describe debtors' assets and the value of this assets; (b) disclose whether the debtors will pursue any avoidance claims; (c) provide adequate information regarding the debtor's equity offering under Plan; (d) adequately describe the risks and assumptions upon which the plan is based; (e) provide an adequate liquidation analysis; (f) describe the claims against the Debtors adequately; and (g) provide adequate information regarding tax issues.

The Debtors' Disclosure Statement with exhibits is forty-five (45) pages in length. It contains an Overview of the Plan, Claims, and Treatment of those claims; the History of the Debtors, and Events leading to the Ch 11 filing; Significant Events occurring during the Ch 11 Case; and Alternatives to Plan Confirmation. There are two (2)

Exhibits to the Disclosure Statement: (1) a Liquidation Analysis, which includes claim and distribution amounts in Classes 2 (iStar), 3 (Mechanic's Liens), and 5 (General Unsecured Claims); and (2) detailed projections for rental and tenant reimbursements, income, and expenses for the next five (5) years. The Court Conditionally Approved the Disclosure Statement on September 20, 2010 (Doc. No. 84), and the Debtors believe it is sufficient to comply with the requirements of Section 1125 as containing "adequate information" of a kind and in sufficient detail to enable hypothetical, reasonable investors typical of the Debtors' creditors and equity interest holders to make an informed judgment whether to accept or reject the Plan.

iStar has further alleged the following are Plan deficiencies: does not comply with applicable provisions of the Bankruptcy Code in violation of 1129(a)(1); was not proposed in good faith in violation of 1129(a); is not in best interest of creditors as iStar will receive more in a Chapter 7 case; will not be accepted by each class of impaired claims in violation of 1129(a)(8); is not feasible; the Plan does not provide iStar with the present value of its claim; the Plan violates the absolute priority rule.

It would seem that iStar is asserting arguments that, for the most part, are positions that impact rights and obligations of <u>unsecured</u> creditors. From the Debtors' standpoint, the plan is confirmable as to iStar and the totality of its <u>secured</u> claims by virtue of providing fair and equitable treatment as outlined in the plan consistent with 11 U.S.C. § 1129(b)(2)(A)(i). Stated another way, absolute priority rule or other objections that are premised upon rights that unsecured creditors may or may not have are not claims that can or should be pursued by iStar. All other creditors including unsecured creditors support the plan, and iStar does not have standing to raise objections that would

otherwise be within the purview of other creditors. Put simply, iStar does not have standing to raise many if not all of the points it is pressing.

In any Federal Court, a litigant must "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343, 354-55 (1975). Litigants in federal court are barred from asserting the constitutional and statutory rights of others in an effort to obtain relief for injury to themselves. *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 643 (2nd Cir. 1988).

Courts frequently use the doctrine of standing to cut off parties who attempt to raise the rights of other parties who are capable of advancing their own interests. *See, e.g, In re Westwood Plaza Apartments*, 147 B.R. 692, 698 (Bankr.E.D.Tex.1992) ("creditors lack standing to challenge provisions of a plan that do not affect them"); *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 717, 721 (Bankr.S.D.N.Y. 1992) ("'a party who is not directly 'aggrieved' by the construction of a provision of the Plan would lack the requisite standing.'", quoting *In re Johns-Manville Corp.*, 68 B.R. 618, 623-24 (Bankr.S.D.N.Y.198)); *In re B. Cohen & Sons Caterers, Inc.*, 124 B.R. 642, 647 (E.D.Pa. 1991) ("creditors lack standing to challenge those portions of a reorganization plan that do not affect their direct interest"); *In re Orlando Investors, L.P.*, 103 B.R. 593, 596-97 (Bankr.E.D.Pa. 1989) ("statutory right to be heard on an issue" does not include "the right to assert interests possessed solely by others"); *In re Wonder Corp.*, 70 B.R. 1018, 1023-24 (Bankr.D.Conn. 1987) (conclusive presumption of § 1126(f) that unimpaired creditors have accepted plan deprives them of standing to object to confirmation).

iStar's arguments against the plan focus on traditional positions that unsecured creditors sometimes raise in Chapter 11 cases. Secured creditors do not the right to assert

positions that apply to unsecured creditors. Accordingly, in addition to the factual recitations set out in this affidavit, iStar lacks standing.

Notwithstanding iStar's allegations, the Plan meets all applicable requirements for confirmation under section 1129(a). With the exception of iStar, all other voting creditors have voted in favor of the Plan. The Plan was proposed in good faith pursuant to Section 1129(a)(3). The Plan provides for the continued operation of the Debtors, a 100% distribution to its secured creditor with interest over five years, a 90% distribution to Mechanics Lien Claims within one year, and a 90% distribution to its unsecured creditors over five years. In liquidation, unsecured creditors would receive no distribution. The Revised Projections attached as Exhibit 5 hereto attest to the feasibility of the Plan. The primary objectives of the Bankruptcy Code that are advanced by a chapter 11 case include the maximization of the value of the estate, the expeditious resolution of disputes, and speedy payment to creditors. These objectives are met in these cases.

## II. CONFIRMATION REQUIREMENTS

### A. Plan's Compliance §1129(a)(1)

The Plan complies with certain provisions of the Bankruptcy Code. By way of example, the Plan:

1. designates, subject to §1122 of the Bankruptcy Code, classes of Claims;

2. specifies any class of Claims that are not impaired under the Plan;

3. specifies any class of Claims that are impaired under the Plan and the treatment of any class of Claims or Interest that are impaired under the Plan;

4. provides the same treatment of each Claim of a particular class, unless the Holder of a particular claim has agreed to a less favorable treatment of such particular Claim;

5. provides adequate means for the Plan's execution; and

6. provides for the assumption and rejection of executory contracts.

### B. Proponent's Compliance - §1129(a)(2)

The Debtors' have complied with the applicable provisions of the Bankruptcy Code. The Debtors are qualified to file a Plan. By way of example, the Debtors have:

1. performed and complied with the duties imposed under §1107 of the Bankruptcy Code;

2. solicited acceptances of the Plan only in accordance with §1125 of the Bankruptcy Code;

3. obtained court orders for the employment of professionals; and

4. complied with the Bankruptcy Code and the Bankruptcy Rules regarding the use, sale and lease of property of the estate.

### C. Good Faith - §1129(a)(3)

The Plan has been proposed in good faith and not by any means forbidden by law. By way of example, the Plan provides for the payment of creditors from funds available from continued operations.

### D. Payments to Professionals - §1129(a)(4)

All payments made, or to be made, by the Debtors in or in connection with these cases or in connection with the Plan either have been approved by or are subject to the approval of this Court. At the hearing on confirmation, or at some time prior to the Effective Date, the Court will determine to the extent appropriate and allow as reasonable certain fees and costs of administration.

### E. Officers/Directors - §1129(a)(5)

Clark D. East is the Trustee of the Trust ("**East**"). East serves as the Trustee of the Trust with no salary or benefits paid in return for his duties as Trustee. The Beneficiaries of the Debtor/Trust are (a) Gold Doubloons, LLC, an Ohio limited liability company holding a 45% interest in the Debtor/Trust; (b) Black Beard, LLC, a Florida limited liability company holding a 5% interest in the Debtor/Trust; and (c) Treasure Chest, LLC, a Florida limited liability company holding a 50% interest in the Debtor/Trust (collectively, the **Beneficiaries**"). East is the principal of Treasure Chest, LLC. The Beneficiaries and their principals do not receive salaries and have not received benefits from the Trust.

### F. Government Approval - §1129(a)(6)

No regulatory commission has jurisdiction after confirmation of the Plan over rates of the Debtors.

### G. Best Interests of Creditors - §1129(a)(7)

With respect to each impaired class of Claims, each Holder of a Claim of such class has either accepted the Plan or will receive or retain under the Plan on account of such claim, property of a value, as of the Effective Date, not less than the amount such

Holder would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date. As set forth in this Confirmation Affidavit, the Plan and the Liquidation Analysis, the Holders of Claims, including Holders of Unsecured Claims against the Debtors, will receive more than they would receive in liquidation. Because the recovery under the Plan is not less than the recovery under a hypothetical Chapter 7 liquidation, the Plan satisfies the "best interests of creditors test."

### H. Acceptance or Rejection of Plan - §1129(a)(8)

The Ballot Tabulation (Doc. No. 139) reflects 100% acceptance from Classes 3, and 5. iStar filed a ballot as a Class 5 creditor in the amount of $6,089,831.40. The Debtors have moved to designate, strike, or otherwise determine proper tabulation of iStar's Class 5 Ballot (Doc. No. 136), and it has not been included in the currently filed Ballot Tabulation. As of this writing, only iStar remains as an outstanding issue in this case. The Debtors assert that the treatment of iStar is fair and equitable under Section 1129(a) of the Bankruptcy Code.

### I. Priority Claims - §1129(a)(9)

The Plan provides for payment in full of all Administrative Claims and Priority Claims. Priority Tax Claims will receive the treatment required under the Bankruptcy Code.

### J. Acceptance by Impaired Classes - §1129(a)(10)

As described in the Ballot Tabulation, the Debtors have received 100% acceptance from two impaired classes of creditors.

### K. Feasibility - §1129(a)(11)

As illustrated in Exhibit 2 to the Disclosure Statement (Doc. No. 79) (attached hereto as <u>Exhibit 2</u>) and the revised projections (attached hereto as <u>Exhibit 5</u>), the payments to be made under the Plan are feasible and the Plan meets the requirement of feasibility as set forth under §1129(a)(11) of the Bankruptcy Code. Further, the positive cash flow reflected in <u>Exhibit 5</u> indicates that confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtors.

### L. Trustee's Fees - §1129(a)(12)

All fees payable under §1930 of Title 28, as determined by the Court at the hearing on confirmation of the Plan, have been paid or the Plan provides for the payment of all such fees on the Effective Date.

### M. Retiree Benefits - §1129(a)(13)

There are no unsecured claims for contribution to a retiree benefit plan. Thus, there are no retiree benefits dealt with under the Plan.

The principal purpose of the Plan does not contemplate the avoidance of taxes or the avoidance of the application of §5 of the Securities Act of 1933.

FURTHER AFFIANT SAYETH NAUGHT.

_____
CLARK EAST

STATE OF FLORIDA

COUNTY OF HILLSBOROUGH

The foregoing instrument was sworn to and subscribed before me on this 7TH day of January, 2011, by Clark East, Trustee, who is personally known to me or who produced DL E 230-104-57-324-D as identification and who did take an oath.

_____
Notary Public

KHANK WHITESIDE
Printed Name

K. WHITESIDE
Commission # EE 025106
Expires September 12, 2014
Bonded Thru Troy Fain Insurance 800-385-7019